*Western Division*

*District Court of Springfield*

## SPRINGFIELD HOSPITAL

### v.

## ALBERT COPSON

*Alberti, J.* This is an action of contract brought by the plaintiff hospital for services rendered and facilities furnished by it to the minor daughter of the defendant.

The court (*Ehrlich, J.*) found that after attending a clinic, it was determined that the defendant's minor daughter's tonsils and adenoids should be removed. In discussing the matter of cost for hospitalization, a representative of the plaintiff told the defendant that the usual price charged for services of this sort was $22.00. The daughter was admitted to the hospital on January 3, 1954 and the operation for the removal of the tonsils and adenoids was performed the following morning. Later that morning, it developed that there was a clot in the tonsil tissues which bled profusely. As a result, the child was again brought into the operating room, and the bleeding was stopped by cutting off the capillaries in the tonsils. This condition of the child was not a nomal one, was not ascertainable before the operation took place, and was peculiar due to the condition of the capillaries and bruises in the defendant child's tonsils. Because of the abnormal condition, it became necessary to give the minor child two (2) transfusions; and she was obliged to stay in the hospital from January 3, 1954 until January 11, 1954.

At the time the price of $22.00 was mentioned by the plaintiff to the defendant, there was an im-

plied agreement between the parties that this price was in anticipation of a normal result after tonsillectomy, and that should complications result, the hospital should do all things necessary to safeguard the welfare of the minor child, for which the defendant obligated himself to pay. The court also found that the defendant, by implication, would want the hospital to do all things necessary to safeguard the life of his minor child should unforeseen conditions result from the operation.

The defendant, on the day of the release of his minor daughter from the hospital, signed an agreement whereby he agreed to pay the amount claimed by the plaintiff for the services and facilities rendered to her. On or about that time, the defendant paid $10.00 on account. The amount charged by the plaintiff was the sum of $153.00 for room, for the use of the operating room, for laboratory facilities, and service charges for the blood transfusions.

The defendant filed requests for rulings, the first and second of which were allowed, and the third of which was allowed as good law but deemed to have been not in accordance with the facts as found by the court.

The defendant claims to have been aggrieved by the fact that although the court allowed request number one, in terms as follows,

"That the plaintiff, although an incorporated charitable institution, must as any other person who brings an action on an account annexed, prove that the charges that it has made are fair and reasonable for the services rendered to the plaintiff.", *Beverly Hospital v. Early*, 292 Mass. 201, and since there was no evidence introduced to the effect that the charges made by the plaintiff were in fact fair and reasonable, it could not, as a finder of fact, find for the plaintiff in the charged amount.

The question at issue, therefore, is did the court, as a finder of fact, err in finding for the plaintiff in the charged amount in the absence of specific evi-

dence to the effect that the charge made was in fact fair and reasonable?

Where a finder of fact cannot be assumed to have acquired from common experience and general knowledge of ordinary affairs such information as will enable him justly to evaluate the fair value of a service rendered or a facility furnished, evidence of such fair value is necessary, and the absence of such evidence will prohibit the assessment of substantial damages. *Driscoll v. Bunar*, 328 Mass. 398, 403. In that case, it was held that in the absence of evidence of fair market value of the services of a real estate broker, the jury could not assess substantial damages since it "cannot be assumed to have acquired from common experience and general knowledge of ordinary affairs such information as will enable them justly to evaluate the services of a real estate broker." In *Buckley v. White*, 328 Mass. 654, it was held that in the absence of evidence of the fair value for the loss of use of an automobile during the period of its unlawful detention by the defendant, such damages could not be assessed; and that if the plaintiff wanted an award of damages for such detention, it was incumbent upon her to prove them.

Where there is some evidence, though it may be scanty, of the fair value of the damages, the finder of facts will be warranted in assessing damages. See *Whitcomb v. Reed Prentice Co.*, 262 Mass. 348, 361, which held that damage to a business caused by breach of covenant, though it cannot be proved with any degree of certainty, can in fact be assessed. See also to the same effect *Parker v. Levin*, 285 Mass. 125, 129, a case involving a breach of covenant not to compete. However, where a finder of fact has acquired from common experience and general knowledge of ordinary affairs, a practical judgment which he could use in evaluating services and at arriving at a proper conclusion upon the evidence, he may assess damages, even though there is no direct evidence as to the fair value of such damages.

*Scullane v. Kellogg,* 169 Mass. 544, 550. (Medical Care.); *McGarrahan v. N. Y., N. H., & H. RR.,* 171 Mass. 211. (In dicta, the court indicates that damages may be assessed for care rendered at a private home.); *Maynard v. Royal Worcester Corset Co.,* 200 Mass. 1, 18; (Employment contract.); *C. v. Hosman,* 257 Mass. 379, 386; (Value of personal property.); *Cross v. Sharaffa,* 281 Mass. 329, 331; (Personal injuries.); *Doherty v. Ruiz,* 302 Mass. 145, 147; (Value of Wages.); *Bradford v. Cunard Ship* Co., 147 Mass. 55, 57; (Assessment of damages as to goods destroyed.); *Patrick O'Reilly's Case,* 265 Mass. 456, 458; (Earning capacity of an employee.); *Byam v. Carlisle Ayer Co.,* 272 Mass. 176, 179; (Value of services of an architect in drawing plans and specifications for a building.); *Thibault v. DeVio,* 318 Mass. 605, 606; (Value of household services, together with services in caring for ill person over a long period of time.)

Much as the thought of going to and being treated at a hospital may not be a pleasant one to most people, it is not deemed to be the kind of tragedy that our forefathers used to consider it at an earlier time in our history when techniques of medicine and of institutionalized medical care were not as advanced as they are at the present time. While formerly going to a hospital was something to be dreaded as a last resort, under present conditions, some people think of it as the first thing to be done on experiencing the slightest physical inconvenience. It may be said that under present day conditions, a hospital is not a place where one goes because there is no further hope for life, but rather for the reason that one wants to enjoy a more extended and more pleasant one, where all sorts and manner of extended medical tests are available and can be made by qualified technicians under the supervision of competent medical specialists.

Quite commonly, the citizens of this commonwealth use hospital facilities almost for minor ail-

ments. Knowledge of such institutions, the facilities afforded, and charges made by them, are within the common and general knowledge of the ordinary person. Particularly is this now true as a result of the general use of insurance covering payment for hospitalization and doctors' care, afforded by such agencies as the Blue Cross-Blue Shield, and other insurance companies, afforded generally by many large industries for their employees, and purchased by others for their own account. It can, therefore, be said that general and common knowledge of hospital facilities, and the cost of the same, is not beyond the realm of common knowledge of a finder of fact.

Moreover, since the defendant signed an agreement to the effect that he was liable for the various charges made against him, he, in effect, admitted responsibility for their payment.

*We find no prejudicial error.*