AARON BABIKIAN *vs.* J. TRIMBLE BROWN.

Suffolk. January 11, 1935. — January 27, 1936.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Contract*, Validity, Construction, Modification, Of employment. *Damages*, For breach of contract.

A contract requiring an employee of another to leave his job without notice was not illegal if he had not contracted with his employer to give notice.

On evidence that a rule of a hotel required a bell-boy to give a week's notice before leaving, but none that the rule was in force at the time of his hiring, it was a question of fact for the jury whether, with subsequent knowledge of the rule, his conduct had been such as to show his assent to its becoming a part of his contract of employment.

In an action for breach of a contract to procure for the plaintiff employment as a bell-boy in a hotel, the evidence justified the inference that the employment would be for a considerable though indefinite time; and a requested ruling that the plaintiff could recover only what he would have earned in two weeks rightly was denied.

In an action for breach of a contract to procure for the plaintiff employment as bell-boy in a hotel as attendant upon a certain woman, evidence that for years he had satisfactorily attended the same woman in another hotel and regularly had received large tips from her warranted an inference that such tips would have continued had the plaintiff secured the promised employment; and a requested ruling that damages were to be computed solely upon the basis of his expected wages excluding expected tips, rightly was denied. ,

. CONTRACT. Writ dated June 22, 1933.

The action was tried in the Superior Court before *Dillon,* J. There was a verdict for the plaintiff in the sum of $1,500. The defendant alleged exceptions.

*B. Aldrich,* for the defendant.

*E. S. Farmer,* for the plaintiff.

DONAHUE, J. This is an action of contract to recover damages for the breach of an agreement to obtain for the

plaintiff employment as, a bell-boy at the Ritz-Carlton Hotel. The plaintiff had been employed as a bell-boy at the Hotel Touraine for thirteen years when the defendant according to his own testimony made arrangements, on behalf of an elderly lady who had lived at the Touraine for several years and was about to move to the Ritz-Carlton, for the transfer of the plaintiff and several other employees of the Hotel Touraine to the Ritz-Carlton. The plaintiff testified that the defendant promised him that "if he would quit his employment as bell-boy in the Touraine and do so without giving any notice to the management of his intention to leave, and would keep the whole thing a secret from everyone either in or outside of the hotel . . . he would see that the plaintiff was employed as a bell-boy in the Ritz-Carlton Hotel; that he would be the only bell-boy there to wait on" the elderly lady and that the plaintiff "would make as much in tips at the Ritz as he did at the Touraine, because he would get all" her tips. The defendant told the plaintiff to say nothing to her about the arrangement. The plaintiff left the Hotel Touraine at the time the defendant told him to without giving notice of his intention to quit to his employer. The defendant did not, as he promised, procure for the plaintiff the position of bell-boy at the Ritz-Carlton.

After a verdict by a jury in the Superior Court the case is here on the defendant's exceptions to the refusal of the trial judge to direct a verdict for him and to the refusal of the judge to give two requests for rulings relating to damages.

1. The motion that a verdict be directed for the defendant was denied rightly. Its only ground as stated by defendant's counsel in response to a query by the trial judge was that "the plaintiff's contract was illegal." The defendant's contention is that the performance of the agreement between himself and the plaintiff required a breach of the plaintiff's contract with the Hotel Touraine. This rests upon the further contention of the defendant that the plaintiff's contract of employment at that hotel included a requirement that the plaintiff must give a seven-day notice

in the event that he desired to terminate that employment. The plaintiff testified that it was a rule of the hotel that bell-boys had to give seven days' notice on leaving. He also testified on cross-examination that if the defendant had not told him not to, he would have given such a notice. A basic question raised by the defendant's motion for a directed verdict is whether as matter of law the regulation as to giving notice was a part of the plaintiff's contract of employment. If on the evidence such a ruling of law could not have been made, the defendant's contention on this branch of the case must fail.

In order to find the rule to be a part of the contract it would have to appear either that the rule was in existence and known to the plaintiff when he was hired in 1918 or that, upon the rule later coming into existence, the plaintiff in some manner assented to its being added as a term of the contract. *Hunt* v. *Otis Co.* 4 Met. 464. *Stevens* v. *Reeves*, 9 Pick. 198. *Collins* v. *New England Iron Co.* 115 Mass. 23. *Preston* v. *American Linen Co.* 119 Mass. 400.

There was no evidence as to the terms of the hiring in 1918 and it did not appear that the rule as to notice was known to the plaintiff at that time or even that such a rule was then in existence, so there is no basis for a finding that the rule as to notice was a part of the plaintiff's contract of employment when that employment began. An employee, whose original contract included no requirement of compliance with a rule promulgated by his employer, upon later learning of the existence of such a rule may, on adequate evidence, be found to have assented to its incorporation in the contract either expressly or by his conduct, or even by his silence. There was no evidence that the plaintiff after his employment began expressly assented to the rule in question becoming a part of his contract of employment. Although there is nothing in the record to show when or in what manner the rule came into existence or when or under what circumstances it came to the attention of the plaintiff, there was presented a question of fact as to the plaintiff's implied assent. That question has been decided adversely to the defendant's contention by the jury

under instructions to which no exception was taken. On the circumstances in evidence it could not have been ruled as matter of law that the plaintiff assented to the requirement as to notice being incorporated in the contract. The facts that the plaintiff after learning of the rule continued to work for some length of time at least and that he would have given notice of his intent to leave if the defendant had not forbidden it, and the fact that the statement of the defendant's promise appearing in the plaintiff's declaration refers to the plaintiff leaving his employment "without giving the usual seven days' notice," do not make the question whether the plaintiff assented to the rule becoming a term of his contract one of law rather than of fact. *Collins* v. *New England Iron Co.* 115 Mass. 23. *Preston* v. *American Linen Co.* 119 Mass. 400, 404.

2. The judge refused the defendant's request for the instruction that "Inasmuch as the defendant's alleged agreement was merely to obtain employment for the plaintiff at the Ritz Hotel and the said employment by the custom of the said hotel would have been merely from day to day, there is no evidence from which it could be found that the plaintiff would have remained in the employ of the hotel for more than two weeks at the outside, and the plaintiff's damages, therefore, can in no event exceed what the plaintiff would have earned in two weeks." The defendant states in his brief that he does not contend that the damages recoverable for a breach of such a contract "would necessarily be limited to two weeks' earnings. What he does claim is that the plaintiff has introduced no evidence justifying a longer period of recovery." The parties in making their agreement manifestly contemplated that greater advantages would thereby come to the plaintiff than would result from the ordinary employment of a bell-boy at a hotel. It included the exclusive right in the plaintiff to serve a patron of the hotel whose practice it was to reward very generously those who served her. It was contemplated by the parties and expressed in the defendant's promise that the plaintiff's earnings through her tips would be as great as they had been when he served her as bell-boy at

the Hotel Touraine. The Ritz-Carlton Hotel was to pay him for his services as bell-boy no more than $5 or $6 a week but during the three years preceding the making of the contract with the defendant he had received from her an average of $45 a week in tips although he was only one of four bell-boys attending to her wants at the Touraine.

The agreement did not provide a particular fixed term for the duration of the contract but it plainly contemplated some considerable period of time more than two weeks. The judge by instructions to which no exceptions were taken left it to the jury to say what, in the circumstances existing at the time of the making of the contract and the contingencies which might happen, was its contemplated probable duration. For such period as the jury might find that to be the defendant promised the plaintiff employment. There was evidence which afforded the jury a basis for estimating the amount of damage for the failure to keep that promise. There was no error in refusing the request for instructions above set forth.

The defendant also excepted to the refusal of the judge to instruct the jury that "In computing the damages . . . the jury shall consider only the salary which the plaintiff would have received, and shall not consider tips and other gratuities that might have been given him." There was no error in denying this request. The defendant states in his brief that he "does not dispute the proposition that tips are an element of earnings just as much as salary. [See *Powers's Case*, 275 Mass. 515.] His contention is that prospective tips here have not been proved." The contention rests largely on the fact that, after the Ritz-Carlton had refused to employ him as bell-boy but did employ him as "special messenger" without uniform and stationed him in a back room, the lady whom by the terms of the defendant's agreement he exclusively was to serve as bell-boy did not call for his services. The jury might have found that this was the result of the defendant's breach of his contract and the anomalous status in which the plaintiff was left. There was evidence that while the plaintiff was at the Touraine his services were satisfactory to the man-

agement and to the lady whom the defendant promised he would continue to serve; that she called on the plaintiff for service at the Touraine more than she did the other bell-boys; that the amount of tips received by him from her was fairly uniform from year to year; and that if the defendant had kept his promise the plaintiff would have rendered her more service than he had before. It could not have been ruled as matter of law that the evidence did not permit the inference by the jury that if the plaintiff had secured the position of bell-boy at the Ritz-Carlton her past uniform good will and generosity would have continued.

The evidence afforded the basis for an approximate determination of the plaintiff's damages. It was not necessary that the damages should have been proven with mathematical accuracy and it does not matter that their determination depends to some extent on the consideration of events which were contingent. *Hawkins* v. *Jamrog*, 277 Mass. 540, 544. *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1, 8.

*Exceptions overruled.*